# US DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

                    **Plaintiff,**

**v.**                                                    **Case No. 18-20191**
                                                         **Hon. Bernard A. Friedman**

**RAY GUERRERO,**

                    **Defendant (D-1).**

_____/

UNITED STATES ATTORNEY            AMBERG & AMBERG, PLLC
David Portelli                    James W. Amberg (P68564)
Attorneys for the Government      Attorneys for D-1 Ray Guerrero
211 W. Fort Street, Suite 2001    32121 Woodward Ave., PH
Detroit, MI                       Royal Oak, MI 48073
313.226.9100 office               248.681.6255 office
                                  248.681.0115 fax
                                  www.amberglaw.net

                                  BABI LAW FIRM, PLLC
                                  Carly Hakim Babi (P82752)
                                  32121 Woodward Ave., PH
                                  Royal Oak, MI 48073
                                  248-599-1039 (phone)
                                  888-778=7122 (fax)

_____/

### SENTENCING MEMORANDUM
### _____

        Now comes Ray Guerrero, by and through his attorneys, James

Amberg, and Carly Babi, and respectfully submits this sentencing

memorandum to the Court. Mr. Guerrero was found guilty of some of his

charges at trial, while other, more serious charges, were rejected by the

Jury.  There are numerous objections to the guideline calculations that will

be discussed below. In addition, this Memorandum concerns Mr. Guerrero's character and other issues that he wishes the Court to know about him in deciding a fair sentence.  Ultimately, Mr. Guerrero requests that the Court sentence him to time served, followed by a term of supervised release.

## PART ONE-THE USE OF RELEVANT, ACQUITTED, AND DISMISSED CONDUCT AT SENTENCING

Mr. Guerrero's sentencing involves a variety of sentencing concepts concerning what conduct can be used in determining his offense conduct. In the case at hand, Mr. Guerrero was found not guilty of the most serious charge, which was conspiring to distribute over 5 kilograms of cocaine. The Jury, having heard the facts of the case, found him guilty of the lesser amount of 500 grams of cocaine, which was consistent with Mr. Guerrero's argument that he was a small-time drug dealer that was using the proceeds of dealing to purchase drugs for his own use to feed his drug addiction. Further, the Jury also acquitted him of possessing firearms in furtherance of a drug trafficking crime, which would signify that at no time did Mr. Guerrero possess a firearm while committing the drug conspiracy.  Finally, although there were allegations made of sex trafficking and other abhorrent behavior by Mr. Guerrero against his nieces, these charges were dismissed by the Government prior to trial, and thus Mr. Guerrero never had the chance to confront these allegations, as he very adamantly has wanted to

2

do since the beginning of the case.  It is believed that the nieces may have even recanted their earlier statements.

Post *Booker*, judge-found facts did not run afoul of the Fifth or Sixth Amendments so long as they satisfied a preponderance of the evidence standard. See, eg, *United States v White*, 551 F3d 381, 383-385 (6th Cir 2008)(en banc) (finding no Sixth Amendment violation where the sentence enhancement based on acquitted conduct satisfied the preponderance of the evidence standard—relying on *United  States v Watts*, 519 US 148 (1997), which remained good law post *Booker*); *United States v Fisher*, 502 F3d 293, 305-06 (3d Cir 2007); *United States v Villareal-Amarillas*, 562 F3d 892, 897-98 (8th Cir 2009); see also *United States v Staten*, 466 F3d 708, 720 (9th Cir 2006)(applying higher "clear and convincing evidence" standard where a sentencing factor had an extremely disproportionate effect on the ultimate sentence, but noting that the preponderance of the evidence standard remains the general baseline to resolve factual disputes at sentencing post *Booker*)

As Judge Edmunds recently reasoned:

"While judicial fact-finding at sentencing remains widely accepted post Booker, limitations on the practice should—and do—exist. Most significant is the requirement that federal sentences punish defendants only for convicted offenses (not for unrelated, unconvicted conduct), and that facts found by the sentencing judge be used only insofar as they contextualize the offense of conviction. This limitation—referred to as the "relatedness principle"—has been explicitly endorsed as a rule by the Tenth Circuit and operates *sub silentio* in most courts." *United States v Chandler*, No. 15-20246, 2018 WL 618737, at 3 (ED Mich Jan 30, 2018)

The relatedness principle is found in the Sentencing Reform Act, where it instructs the sentencing court to consider "the nature and circumstances of the offense ..." 18 USC §3553(a)(1) and that a sentence should be sufficient, but no greater than necessary, "to reflect the seriousness of the offense ...." *Id* §3553(a)(2)(A)  This is incorporated in the Guidelines under the blanket term of "relevant conduct" at USSG §1B1.3, which hold one responsible for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and in a conspiracy case, "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and(iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id* at (a)(1)(A) and (B)

## PART TWO-OBJECTIONS TO PRESENTENCE REPORT

### Drug Quantity

Mr. Guerrero was scored 30 points, per USSG §2D1.1, for an offense involving at least 5 kilograms but less than 15 kilograms.  This was the Government's theory of the case, and that theory was soundly rejected as follows:

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

**Question 2: Regarding Cocaine**:

A.       With respect to Count One of the Amended Second Superseding Indictment, was the defendant responsible for cocaine?

_____No      ❌ Yes

B.       If you answered Yes he was responsible for cocaine, the amount of the mixture or substance containing a detectable amount of cocaine was (indicate answer by checking only one line below):

_____ at least five kilograms

❌_____ at least 500 grams

_____ less than 500 grams

See *Verdict Form*, ECF 600; PgID 2537

Regarding the scoring of drug amounts, the Guidelines instruct as follows:

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved."  USSG §2D1.1 app note 5

"[T]he evidence supporting the [sentencing court's] estimate 'must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate.'" *United States v Sandridge*, 385 F3d 1032, 1037 (6th Cir 2004)(quoting *United States v Owusu*, 199 F3d 329, 338 (6th Cir 2000)) When precise measurement of the drugs is impossible, the sentencing court must approximate the amount charged to defendants. (See *United States v Jennings*, 83 F3d 145 (6th Cir

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

1996)) As such, "a defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known to defendant or were reasonably foreseeable to him." *Id* at 150. "A court may hold a defendant responsible for an amount of drugs only if the court finds that it is more likely than not that the defendant actually was responsible for at least that amount." *United States v Ward*, 68 F3d 146, 149 (6th Cir 1995), cert denied, 516 US 1151, 116 (1996)

In the case at hand, the Jury found that Mr. Guerrero was responsible for less than 5 kilograms of cocaine. None of the other narcotics were quantified, but there was never any evidence of extensive sales of them accruing to any significant amount.  Regarding the conspiracy itself, there are serious issues as to the extent of the conspiracy, as the trial suggested that the Guerrero's operated independent of Mr. Guerrero in their own criminal conduct, thus whatever they were up to was not relevant, nor foreseeable, to Mr. Guerrero. As such, it is argued that the correct scoring should be 500 grams to 2 kilograms of cocaine, which would be a level 24, per USSG §2D1.1(c)(8)

### Possession of a Dangerous Weapon

The PSR scores Mr. Guerrero with a two-point enhancement for possessing a weapon during a drug crime as permitted under USSG §2D1.1(b)(1). The Court has endorsed the use of a burden-shifting framework at sentencing to determine whether the firearm enhancement

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

6

applies. First, the government must "establish by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v Catalan*, 499 F3d 604, 606 (6th Cir 2007)(internal citations omitted)  Then, only if possession is established, "the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense." *Id* (internal citations omitted)  Likewise, "The enhancement should be applied if the weapon was present."  USSG §2D1.1 app note 11(a)

The Sentencing Commission's commentary on this enhancement explains that it "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 cmt n11(A)  For example, "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." *Id*

"In the context of a long-running drug-trafficking conspiracy, the government needs to show some nexus between the demonstrated firearm possession—actual or constructive—and the defendant's activities in pursuit of the conspiracy; possession cannot simply be possession at any point during the conspiracy, without regard to any nexus." *United States v Kennedy*, 65 F4th 314, 324 (6th Cir 2023) Possession must be during the offense of commission or relevant conduct, *United States v Faison*, 339 F3d

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

518, 520 (6th Cir 2003), which includes "all acts and omissions committed or aided and abetted by the defendant … that occurred during the commission of the offense of conviction." *United States v McDowell*, 902 F2d 451, 454 (6th Cir 1990)(quoting USSG §1B1.3(a)(1))

Further, the "[m]ere presence on the scene plus association with illegal possessors is not enough" to establish constructive possession. *United States v Birmley,* 529 F2d 103, 107 (6th Cir 1976)  Several factors may be considered in this analysis, including: (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession. *United States v. Kennedy*, 65 F4th 314, 318 (6th Cir 2023)*,* citing *United States v Greeno*, 679 F3d 510, 515 (6th Cir 2012)

Mr. Guerrero's PSR states that he was "found in possession of two firearms (and numerous rounds of ammunition) on August 11, 2016." However, during the trial, it was revealed that though Mr. Guerrero was under surveillance for several months, no evidence was presented to suggest that he had ever even been seen with a firearm. There was no indication that Mr. Guerrero had either actual or constructive possession of a firearm during the commission of a drug crime.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

8

The firearms in question were registered to Mr. Guerrero's ex-wife, and one was found in her purse, which she had on her person while she was away from home when the search started. The other firearm was discovered in a drawer next to women's belongings, with no evidence linking it to Mr. Guerrero or the drug conspiracy. There is no evidence to suggest that Mr. Guerrero's ex-wife was involved in the conspiracy, further undermining that claim. Moreover, no evidence was presented that discerned between the ammunition and firearms.

The enhancement applied to Mr. Guerrero's scoring requires him to have personally possessed a firearm. However, there is no evidence presented by the government that shows a sufficient nexus to find that Mr. Guerrero possessed a firearm during the commission of the drug conspiracy. As such, Mr. Guerrero was rightfully acquitted of his 924(c) charge.

It is, therefore, inappropriate to shift the burden onto Mr. Guerrero. The evidence presented during the trial clearly demonstrates that Mr. Guerrero was not in possession of a firearm during the commission of the drug conspiracy, and thus, applying the enhancement would be unwarranted.

### The Use of Violence

The PSR scores Mr. Guerrero 2 points for using violence against co-defendant Juan Ramirez. Guideline §2D1.1(b)(2) instructs that a defendant's base offense level be enhanced by two levels where a defendant, in the course of committing a drug-related offense, engaged in

9

one of three types of "violence": Where he (1) "used violence," (2) "made a credible threat to use violence," or (3) "directed the use of violence." *United States v Pineda-Duarte,* 933 F3d 519, 522 (6th Cir 2019)

However, Mr. Ramirez admitted that he made up this allegation, as seen below (Government bates pg 1651):

> Ramirez could not recall previously telling SA Jacobs that he was getting two ounces of cocaine from Ray Guerrero in 2011. Ramirez was asked about the incident he had previously told SA Jacobs and TFO Matt Wieas regarding Ramirez being lured to a house and then beaten at the direction of Ray Guerrero, because he was suspected of cooperating with the FBI. Ramirez admitted that he did tell SA Jacobs that story, but it was a lie. Ramirez claimed he made up the story, because he was afraid his parole officer was going to violate him. TFO Stevenson then asked Ramirez where

It is important to note that Mr. Ramirez confessed to lying about Mr. Guerrero using violence or making any credible threats to use violence against anyone. Therefore, there is no evidence to support the claim that Mr. Guerrero engaged in any violent behavior or directed others to do so. As a result, it would be unjustified to assign 2 points here.

### Role Enhancement

The PSR scores a two-level enhancement for Mr. Guerrero for allegedly involving MV-1 and MV-2 in the offense due to their age and because one was pregnant.

Section 2D1.1(b)(14) provides a two-level enhancement in the base offense level of a drug crime if "the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors[, including] (B) [t]he defendant, knowing that an individual

Amberg & Amberg, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

was (i) less than 18 years of age, ...[or] (iii) pregnant... involved that individual in the offense." USSG §2D1.1(b)(14); *United States v Spruiel,* 558 F App'x 48, 50 (2d Cir 2014)

Mr. Guerrero objects to the mention of MV-1 and MV-2. Although MV-1 and MV-2 were mentioned in passing during the trial, neither of them testified in court. Furthermore, their allegations were dismissed before the trial, indicating that they lacked credibility. In fact, it is believed that they have even recanted their accusations against Mr. Guerrero.

It is understandable that Mr. Guerrero vehemently denies these allegations.  Instead, the victimization and involvement of MV-1 and MV-2 was solely at the hands of their father, co-defendant Ronaldo Guerrero. It is also worth noting that this situation had caused a split in the Guerrero family prior to their arrest, with Mr. Guerrero separating himself from his brother.  This further emphasizes that Mr. Guerrero had no knowledge or involvement in the actions of his brother. Therefore, it would be unwarranted to score any points against Mr. Guerrero based on the allegations of MV-1 and MV-2.

**Organizer or Leader**

The PSR scores Mr. Guerrero an additional 4 points for his "organizer or leadership" role in the drug conspiracy. The Sentencing Guidelines provide that a four-level enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a); *United States v Wells,*

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

55 F4th 1086, 1092 (6th Cir 2022), cert denied, No. 22-7106, 2023 WL

3046201 (US, Apr 24, 2023)  The government must establish by a

preponderance of the evidence that the leadership enhancement under

§3B1.1(a) applies. _Wells_, at 1092–93

> "In distinguishing a leadership and organizational role from one of
> mere management or supervision, titles such as "kingpin" or "boss"
> are not controlling.  Factors the court should consider include the
> exercise of decision making authority, the nature of participation in
> the commission of the offense, the recruitment of accomplices, the
> claimed right to a larger share of the fruits of the crime, the degree of
> participation in planning or organizing the offense, the nature and
> scope of the illegal activity, and the degree of control and authority
> exercised over others…."  USSG §3B1.1 app note 4

> In relatively small criminal enterprises that are not otherwise to be
> considered as extensive in scope or in planning or preparation, the
> distinction between organization and leadership, and that of
> management or supervision, is of less significance than in larger
> enterprises that tend to have clearly delineated divisions of
> responsibility.  This is reflected in the inclusiveness of §3B1.1(c).
> USSG §3B1.1 Commentary Background

> Per USSG §3B1.1 Aggravating Role, the following applies:

> "(a) If the defendant was an organizer or leader of a criminal activity
> that involved five or more participants or was otherwise extensive,
> increase by 4 levels.

> (b) If the defendant was a manager or supervisor (but not an
> organizer or leader) and the criminal activity involved five or more
> participants or was otherwise extensive, increase by 3 levels.

> (c) If the defendant was an organizer, leader, manager, or supervisor
> in any criminal activity other than described in (a) or (b), increase by
> 2 levels."  _Id_

Despite the claims made in the PSR, it was clear during the trial that

Mr. Guerrero was not the primary supplier of narcotics for the "Guerrero"

conspiracy. The Jury's verdict speaks for itself, as they rejected the notion

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

that he was the ringleader of a vast drug operation.  It was found that he only distributed 500 grams or more of cocaine, not the alleged five kilograms.  This is consistent with Mr. Guerrero's admissions at trial, through counsel, where he took responsibility for being a small-time drug dealer.  The facts involved in the case also suggest this, as agents obtained numerous TIII wiretap warrants, which did not reveal Mr. Guerrero as anything more than a small-time drug dealer and user.  Nowhere during the trial did witnesses get up and testify they took orders from Mr. Guerrero, as he was not in charge of any of the other people involved.  The conspiracy itself was fragmented with no structure.  The idea that Mr. Guerrero was secretly some sort of kingpin cocaine master of Pontiac is contrary to the evidence presented at trial of a man, addicted to drugs, living in humble circumstances with possessions consistent with a construction worker, not a drug wielding fiend.

Given Mr. Guerrero's involvement in drug conspiracy was limited to small quantities and there is no evidence to suggest that he oversaw anybody, the scoring of 4 points for his alleged leadership role is in error.

### Acceptance of Responsibility

Mr. Guerrero has put forth a compelling argument for a 2-point reduction in his sentence, despite having gone to trial.  USSG §3E1.1(a) allows for a 2-point reduction for acceptance of responsibility.  In making this determination, the Court looks to numerous factors, including the defendant "truthfully admitting the conduct comprising the offense(s) of

13

conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct).  *Id* app note 1(A)  Of import "[c]onviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.").  *Id* app note 2

Mr. Guerrero has never denied being a drug dealer, and was certainly willing to take responsibility for his conduct.  His entire defense at trial was that he was a drug dealer, but that he did not deal in the quantities of narcotics alleged and did not possess firearms in furtherance of the drug dealing.  And to no surprise, the Jury agreed with this.  Mr. Guerrero's position concerning the drug quantities, the accusations of his nieces, and the extent of the scope of the conspiracy has never waivered, as was discussed at length in his motion to withdraw his plea. See ECF 491  His convicted offenses reflect this same position.  Had Mr. Guerrero been offered the chance to plead to the 500 grams with a dismissal of the 924(c) charge, a trial never would have taken place, as he admitted his guilt to the remainder.  The trial affirmed Mr. Guerrero's position and now Mr. Guerrero is prepared to take responsibility at sentencing for what he did.  Thus this is the type of circumstance that a 2-point reduction would be appropriate even though a trial took place.

14

## **Total Points and Proposed Guideline Score**

Mr. Guerrero's arguments and reductions in the offense level scoring result in the following proposed guideline range:

- Offense Score 24

- Maintaining a Drug Premises 2

- Acceptance of Responsibility -2

The final score, with a criminal history category III is a guideline range of 63-78 months. Mr. Guerrero requests the Court adopt this range.

## **PART THREE- THE 18 USC 3553(A) FACTORS**

The goal of federal sentencing is to impose a sentence that is sufficient, but not greater than necessary based on the circumstances.  *US v Kimbrough*, 552 US 85, 92-93 (2007), citing 18 USC §3553(a)  While the guidelines provide an initial starting point for any analysis, the guidelines are not the only consideration and may not be given significant or special weight as to their reasonableness.  *Gall v US*, 552 US 38, 49-50 (2007) Thus, the guidelines are merely advisory in the Court's determination of an appropriate sentence.  *US v Booker*, 543 US 220, 244 (2005)

Instead, the Court should consider all factors contained in 18 USC §3553(a) to determine whether a sentence requested by the party is appropriate.  *Gall*, supra, 552 US at 49-50  If a sentencing judge should find that there exists mitigating circumstances not adequately taken into account by the Sentencing Commission or that the sentence should be

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

15

reduced based on general policy or case-specific grounds, then the sentencing judge may depart downward from the advisory guidelines and fashion a sentence that best serves the interests of justice.  *US v Obi*, 542 F3d 143, 155 (6th Cir. 2008)

Specifically, 18 USC §3553(a) provides seven factors that the Court should review in order to impose a sentence that is "sufficient, but not greater than necessary."  These factors are:[1]

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

  (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)   to afford adequate deterrence to criminal conduct;

  (C)   to protect the public from further crimes of the defendant; and

  (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established;

(5)   any pertinent policy statement;

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

---

[1] Instead of regurgitating the lengthy 3553 factors, counsel for Mr. Guerrero paraphrases the key issues

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

**Nature and Circumstances of the Offense**

For years, the Court has heard the Government portray Mr. Guerrero as the leader in some vast drug conspiracy involving all sorts of awful behavior.  The reality, however, was that Mr. Guerrero was a small-time drug dealer.  The witnesses at trial who knew Mr. Guerrero, like Jason Wolosonowich, confirmed that he did drugs.  As to small time selling, the evidence provided during discovery was replete with examples of small time dealing, such as Mr. Guerrero selling Mr. Wolosonowich 11-25 pills a few different times.  (Bates 311, 325)  Also, Mr. Wolosonowich indicated he bought $20-40 worth of cocaine 5 times from Mr. Guerrero, which clearly shows the level of drug dealer Mr. Guerrero was.  (Bates 1700; interview of Mr. Wolosonowich)

There were other times that the Government's witnesses were selling the various Guerreros small quantities of drugs, such as Ms. Vasilakis offering Roland Guerrero 40 pills via text message (Ex 18; Text 4/22/16; 8463), as seen below:



| 8464 | | Susan | 22/04/2016 19:18:37 (GMT-4) | | Read | Inbox | Phone | Incoming | I've got 40 .I really want .75cents which would be 30$ ___but I will give them to you guys for 25$ang throw in some flexirels |

This type of action did not exist in isolation either, as the phone evidence contained different versions of Mr. Guerrero and others buying and selling small amounts of drugs, sometimes even to each other.

Mr. Johnson also had issues as well.  His testimony that the Guerreros were his cocaine source was inconsistent with his statements to agents that his cousin sold cocaine by the ounce.  (Bates; 1553)  Of course, Mr. Johnson's truthfulness was also at issue, considering he denied this very

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE. PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

statement when testifying at trial, even though he made the same statement to agents.

As has been discussed throughout this memorandum, Mr. Guerrero owns what he did.  He was a small-time drug dealer.  He sold drugs, he bought drugs, he did drugs.  The Government's case relied heavily on the testimony of Lee Shelby to bolster the idea that Mr. Guerrero was some sort of drug kingpin.  But the reality was that Mr. Shelby was caught with 9 ounces of cocaine he admitted was purchased from guy named D-Real, who had nothing to do with Mr. Guerrero's case.

These facts all weigh heavily in favor of a reduced sentence.  Simply put, the conspiracy that the Jury found Mr. Guerrero responsible for was the type that is most common, namely drug addicts selling drugs to get high.

**The History and Characteristics of Mr. Guerrero**

<u>Mr. Guerrero's Incarceration</u>

Mr. Guerrero has been incarcerated since April 6, 2017.  This incarceration took place for a large part at county jails in the hinterlands of Michigan.  When counsel first met Mr. Guerrero, he was incarcerated in the Bad Axe county jail, a facility that can be best described as having a similarity to the jail cells used by Barney Fife in the Andy Griffith show.  He'd been there alone for years at that point, isolated, as his previous lawyer didn't even know where he was located and had never provided him with discovery, let alone visited.  The jail itself appears designed for

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

throwing in the town drunk for the weekend, not a multi-year extended stay awaiting trial.

After his initial plea, Mr. Guerrero was moved to the Milan detention center, where he was subject to dangerous conditions as a result of his sex trafficking charges.  These charges were removed via the Second Superseding Indictment on September 29, 2022, which meant that up to that point, for over 5 years, Mr. Guerrero was subjected to difficult treatment by his fellow inmates because of the charges that ultimately the Government chose not to pursue, likely because they were not true.

Beyond that, Mr. Guerrero had to go through the entire Covid-19 pandemic behind bars.  Covid-19 has been a major topic of litigation in the context of pretrial release, sentencing, and post-sentencing compassionate release.  In the context of sentencing, other district courts have found the effect of Covid-19 resulted in a materially harsher sentence with factors coming into play such as "[t]he psychological toll experienced as a result of Defendant's risk of contracting COVID-19" and "the restrictions imposed on inmates because of the pandemic." *United States v Foozailov*, No 17 CR 262 (LGS), 2021 WL 1894273, at *3 (SDNY May 11, 2021)  Another SDNY Court recently reasoned that "both the increased risks faced by vulnerable individuals like [the defendant] and the heightened restrictions imposed upon all prisoners during the pandemic may enhance the deterrent effect of prison sentences served during the pandemic by making the conditions of confinement harsher, both physically and psychologically, than they would

19

otherwise normally be." *United States v Henareh*, 486 F Supp 3d 744, 751 (SDNY 2020)  In both of these examples, the courts granted sentence reductions.

It is argued that the Court can certainly take into account Mr. Guerrero's difficult confinement during the pendency of his case in deciding a fair sentence.

<u>Mr. Guerrero's Family History and Current Family Situation</u>

Mr. Guerrero had an extremely difficult upbringing that resulted in his lifelong drug addiction.  His father would abuse his mother.  His father got murdered.  His brother got murdered.  The family was extremely poor.  These are all the types of things that would explain the use of substances by all of the Guerreros.

Mr. Guerrero was successful professionally.  He worked his way up through factory jobs to eventually opening up his own contracting business.  He reports to counsel that this business was quite successful and allowed him to purchase a few rental properties.   However, most of the money he made went to drugs, which he would frequently use and abuse.

Mr. Guerrero was married when he was first arrested in the case.  His then-wife was active in his defense, and counsel would routinely keep her updated.  However, over time, the years of incarceration took their toll, and eventually the wife filed for divorce.  As such, Mr. Guerrero has lost everything as a result of these charges.

20

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

Mr. Guerrero's Hope for Rehabilitation

Mr. Guerrero believes that he has mental health and drug addiction issues that need to be addressed.  He wants to do this and the BOP and Probation have a slew of different programs available to help him on his journey to recovery.

**A Fair Sentence Will Adequately Protect the Public, Deter Others, Reflect the Seriousness of the Charge, and Provide Mr. Guerrero with Rehabilitation**

A rehabilitated Mr. Guerrero is the best way to protect the public.  A sentence of time served, followed by supervised release, accomplishes this. Mr. Guerrero has gone through difficulties in his incarceration that would dissuade anybody else from going down that road.  With the right type of treatment and help, Mr. Guerrero will be of no danger to the public, as he has shown that when not on drugs, he can operate a successful construction company.  As to the seriousness of the charge, Mr. Guerrero has done over six years in pretrial detention, this type of time is extremely serious.

**Unwarranted Sentence Disparities**

Besides Rolando Guerrero, whose despicable actions speak for themselves, the remaining defendants in the case received relatively low level sentences.  It is argued that Mr. Guerrero's conduct is similar to that of co-defendants Rocky Wade, Juan Ramirez, and Raymond Vega.  Given how the Jury's verdict reflected this, a sentence of time served for incarceration would certainly be appropriate.

21

## CONCLUSION

Mr. Guerrero was a small-time drug dealer who sold drugs to get high. The Jury agreed with this sentiment and spoke through their verdict.  All the salacious allegations against Mr. Guerrero were dismissed before trial, denying him his chance to confront his accusers once and for all to prove that he hadn't done the terrible things he was accused of.  He was never given that chance.  Had he, the Court would likely have heard how the witnesses recanted what they had said and were protecting their actual abuser, Rolando Guerrero.  Instead, for reasons that counsel cannot explain, the presentence report discusses these allegations like they actually happened.  If the Court is inclined to believe the allegations, then a hearing should take place where Mr. Guerrero can confront his accusers, because the amount of time is vastly different if the Court concludes the allegations are without merit.

Mr. Guerrero requests the Court sentence him to time-served, followed by supervised release.  With everything that has happened in this case, this is the only fair result.  He can receive the help he needs through the Probation department, and try and restart his life that he lost languishing away all of these years.   Mr. Guerrero is remorseful for the things he has done, what he put his family through, and is ready to end this chapter of his life and start building back the relationships he lost because of the years of pretrial detention he went through.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

Respectfully submitted,


/s/*James W. Amberg*
AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for D-1 Ray Guerrero
32121 Woodward Ave., Suite PH
Royal Oak, MI 48073
248.681.6255
248.681.0115 (fax)


*/s/ Carly Hakim Babi*
Babi Law Firm, PLLC
Attorneys for D-1 Ray Guerrero
32121 Woodward Ave., PH
Royal Oak, MI 48073
248-599-1039
888-778-7122

Dated:   05/26/2023

23